United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 6, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 06-70014

ERIC CHARLES NENNO,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

(                    )

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

I

This is an application for a certificate of appealability upon two issues urged by Eric Charles Nenno, now on death row in Texas for the murder and sexual assault of a child. We are not persuaded that the denial of relief on either of these points was an unreasonable application of the law by either the state courts or the federal district court and refuse to issue a certificate of appealability. As the applicant frames the issues, they are:

    1.   Whether a polygraph examiner's deliberate
         silence after he scored Nenno's polygraph – a

tactic he knew was likely to evoke an incriminating statement from an accused who had just taken a polygraph – amounted to a "subtle form of psychological persuasion,"[1] which overcame Nenno's reluctance to admit involvement in the capital murder and made his confessions thereafter involuntary?

2. Whether the Constitution requires that the states provide condemned prisoners with counsel who provide effective assistance in state habeas proceedings?

II

The case as Nenno states it is:

Eric Nenno was indicted for aggravated sexual assault and intentionally causing the death of Nicole Benton on March 23, 1995. He was convicted as charged on January 18, 1996. On February 1, 1996, the jury answered the first special sentencing issue under Art. 37.071, V.A.C.C.P. (the future dangerousness issue), "yes," and the second special sentencing issue (whether mitigating circumstances called for a life sentence), "no." The trial court sentenced Mr. Nenno to death the same day.

On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence.[2] No petition for writ of certiorari was filed in the Supreme Court of the United States. An application for a state writ of habeas corpus was filed thereafter on October 16, 1998, in the trial court. The Court of Criminal Appeals adopted the findings of fact and conclusions of law proposed by the trial court and denied relief on November 14, 2001.[3]

On October 18, 2002, Mr. Nenno filed his original federal petition for writ of habeas corpus in the

---

[1] *Colorado v. Connelly*, 479 U.S. 157, 164 (1986).

[2] *Nenno v. State*, 970 S.W. 2d 549 (Tex.Crim.App. 1998).

[3] *Ex parte Nenno*, No. 50,598-01.

2

District Court.[4] The petition was dismissed without prejudice on January 13, 2004, to allow further exhaustion of a claim based on a new Supreme Court decision. Thereafter, Mr. Nenno refiled his federal petition. On March 7, 2006, the district court granted the state's motion for summary judgement and denied a certificate of appealability. Mr. Nenno filed his notice of appeal April 3, 2006.

## III.

Nenno constructs an argument from *Rhode Island v. Innis*[5] and *Colorado v. Connelly*[6] that state officers coerced his confession by remaining silent after Nenno had voluntarily taken a polygraph test. As the argument goes, the officer maintained silence thinking it likely that Nenno, anxious to learn the results of the test, would speak out. And he did, blurting out that "I flunked it, didn't I." This "coerced" statement, it is said, was the lever for all the incriminatory evidence that followed – taking the police to the child's body in the attic of his home, the incriminating DNA, and more. As for Innis, he was in police custody when officers engaged in conversation among themselves in his presence. The judicial task was to define interrogation proscribed by *Miranda*. The Court refused to confine *Miranda*'s restraints on interrogation of persons in custody to literal question and answer formats, accepting that police conduct

---

[4] *Nenno v. Dretke*, No. 4:02-cv-04907.

[5] 446 U.S. 291 (1980).

[6] 479 U.S. at 164.

3

provoking a response from the prisoner can be functional interrogation, "...words or actions they should have known were reasonably likely to elicit an incriminating response."[7]  Other limits to a finding of "functional" interrogation aside, the Court was addressing an environment found to be inherently coercive, the predicate of *Miranda*.  But Nenno was not in custody when he took the polygraph.  It is true, as Nenno argues, that a confession might in some circumstances be coerced from a person not in custody.  But the question then is one of fundamental fairness under the due process clause.  We cannot conclude that the adjudication by the state court and the denial by the federal district court of this claim was unreasonable by that measure.

IV

Counsel ably states the case for requiring the state to provide counsel in state habeas review of death sentences.  That the primary battle in collateral attack of capital sentences is now in the state courts, located there both by the jurisprudence of the Court and the Congress cannot be denied.  Nor do we question the importance of competent representation for defendants traversing this terrain.  We say only that we do not make light of the argument, saying no more because this inferior court could not grant the requested relief if it were persuaded to do so.  The argument must be made to the Congress or perhaps the Supreme Court.

---

[7] *Innis*, 446 U.S. at 302.

4

And so we must deny a certificate of appealability on this claim as well.

Having denied a certificate of appealability for both issues, we lack jurisdiction to further proceed. The appeal is DISMISSED.